[No. 24835. *En Banc.* November 13, 1935.]

JOHN W. SPARLING, *as Trustee in Bankruptcy, Appellant,* v. GENERAL DISCOUNT AND MORTGAGE CORPORATION *et al., Respondents.*[1]

*R. J. Meakim* (*Arthur Grunbaum,* of counsel), for appellant.

*Eggerman & Rosling,* for respondent.

ON REHEARING.

GERAGHTY, J.—Subsequent to the rendition of the Departmental opinion herein (178 Wash. 663, 35 P. (2d) 60), a petition for rehearing *En Banc* was filed by the appellant. *En Banc* rehearing having been granted, the cause is now before us for disposition.

In the Departmental opinion, page 667, it is said:

"It appears that, in the years 1929, 1930 and 1931, the securities company advanced to the discount company the sum of $196,856.30. During the same years,

[1]Reported in 50 P. (2d) 1023.

the discount company repaid the securities company $163,615.70. On July 7, 1931, when the crisis came in the Pierces' enterprises, the books of both companies showed a balance due of $52,740.70 on account of such advances. It is apparent, therefore, that, of the $163,615.70 paid by the discount company to the securities company, $19,500.10 was on account of interest.''

Appellant, in his petition, contends that the sums actually repaid by the discount company to the securities company during the years 1929, 1930 and 1931 aggregated $144,636.37, rather than the amount stated in the Departmental opinion, the discrepancy arising from the improper inclusion of sums paid in 1928. The correction of this discrepancy, with one or two other minor discrepancies to which attention is called, would require, upon the theory of the Departmental opinion, the finding of a net balance due the appellant, from the discount company, of $15, 708.71. A recheck of the record verifies the contention of appellant as to these discrepancies.

If the conclusion reached in the Departmental opinion upon the issue of the discount company's liability for repayment of the sums advanced and paid on account of its administrative expenses by the securities company is adhered to, it follows that the appellant should have judgment for the balance stated. A majority of the court, however, has reached a different conclusion upon this issue, and is of the opinion that the appellant is not entitled to any recovery under his second and fourth causes of action.

In his second cause of action, the appellant seeks the recovery of $22,154.89, paid the discount company to cover its administrative expenses for the years 1929 and 1930, and in his fourth cause, he seeks recovery of $29,183 on account of like expenses paid by the securities company directly. The Departmental opinion allowed appellant credit for the $22,154.80 ad-

vanced to the discount company for expenses, as claimed in the second cause of action, and $3,270.72 on account of expenses directly paid by the securities company, as claimed in the fourth cause of action.

It is the contention of appellant that he is entitled to repayment of the sums paid or advanced by the securities company toward the administrative expenses of the discount company. The discount company contends that it is under no liability for the repayment of these administrative expenses, since they were paid in fulfillment of an understanding had at the time of its organization, by the Pierces, as a subsidiary of the securities company, and in furtherance of its purposes. The securities company owned all of the common stock of the discount company, for which it paid only a nominal consideration, and the latter company contends that the understanding that its administrative expenses were to be borne by the securities company was part consideration for its common stock.

The trial court found:

"The plan and arrangement initiated and promulgated at the time of the organization of the General Discount & Mortgage Corporation was that all operating expenses of the General Discount & Mortgage Corporation, including salaries, office rentals, telephone, telegraph, legal and miscellaneous operating expenses, should be borne and paid by the Washington Loan & Securities Co. Plaintiff's fourth cause of action is for the recovery thereof. The checks of February 6, 1930, for $10,321.64, and of January 14, 1931, for $11,833.25, the aggregate amount whereof plaintiff seeks to recover under his second cause of action, were given to the General Discount & Mortgage Corporation in accordance with said plan and arrangement to reimburse the latter for expenses already paid by it. None of the items in plaintiff's second or fourth causes of action appear upon the books of either the Washington Loan & Securities Company or the General Discount & Mort-

gage Corporation, kept by agents of the former, as charges against the latter corporation."

This finding of the trial court is amply supported by the record. The discount company was organized by the Pierces ten years after the formation of the securities company as a subsidiary of the latter company, which subscribed for, and held for the purpose of control, all of its common stock. It was intended to be employed as an adjunct to, and an instrument of, the older company.

The original understanding that the administrative expenses of the discount company were to be borne by the securities company was substantially followed until the collapse of the two companies. The books of the securities company exhibited no charge made against the discount company for the expenses. At the beginning, the expenses of the discount company would of necessity have to be borne by the securities company, by reason of the fact that the latter paid only a nominal sum for the common stock of the former, leaving it without working capital or the means of paying its own expenses. The obligation of the older company to bear the expenses of the discount company inhered in the original relation of the two companies and was consistently followed throughout.

Concurring in the view expressed in the Departmental opinion that neither company should profit at the expense of the other, we are, nevertheless, of the opinion that to require repayment by the discount company of the administrative expenses would be imposing upon the preferred stockholders of that company a burden they should not in equity be required to bear. From this conclusion, it follows that, even with the correction of the discrepancies called to our attention by the appellant's petition for rehearing, there would still

be a balance due the discount company, for which, however, it is seeking no affirmative relief.

The judgment of the trial court will be affirmed.

MILLARD, C. J., BEALS, TOLMAN, and HOLCOMB, JJ., concur.

BLAKE, J. (dissenting)—Adhering to the view expressed in the Departmental opinion that:

"Both companies, however, were under the personal domination and control of the Pierces. The personnel of the boards of trustees of both companies was identical—or, at least, a majority of the members of the board of one company comprised a majority of the board of the other. The members of the boards of both companies were mere figureheads, taking no active part or interest in the management of the companies. For all practical purposes, the affairs of both companies were handled by the Pierces as their own private enterprises, with a callous indifference to the rights of the corporations and of the bondholders of the securities company and the preferred stockholders of the discount company. . . .

"With respect to the money demands made by appellant in this action, we have this situation. Pierce, the individual, was using the two corporate legal entities solely for his own purposes, using the funds of both interchangeably to serve his own purposes. Now that a final balance must be struck between the two corporations as a result of the illegal use of the funds of each for the ostensible benefit of the other, neither can, in equity or good conscience, be permitted to profit at the expense of the other,"

I am unable to agree with the result reached by the majority.

The petition for rehearing makes it clear that General Discount and Mortgage Corporation received moneys from Washington Loan & Securities Company, which have not been repaid, to the amount of $15,708.81. The securities company received no con-

sideration whatever for this money; it was advanced as a gratuity to lure the investing public into the purchase of preferred stock of the discount company. The fact that the representation was made to the public that the discount company's administrative expenses would be defrayed by the securities company does not, to my mind, form any legal or equitable basis for sustaining a gift of $15,708.81 by the latter to the former.

We have before us two innocent groups of investors (the preferred stockholders of the discount company and the bondholders of the securities company), who parted with their money upon almost identical representations. The money of neither was used for the purposes represented. On the contrary, their moneys were interchanged and intermingled indiscriminately. Now that each group is trying to salvage what it can, neither should be allowed to profit at the expense of the other. As I see it, the decision in this case permits the preferred stockholders of the discount company to retain, without consideration, $15,708.81, belonging to the bondholders of the securities company.

MITCHELL, MAIN, and STEINERT, JJ., concur with BLAKE, J.